Suit by H.V. Flood and others, as residents and taxpayers, against Jack Farrington and others, for a declaration of rights and a decree enjoining defendants from performing any acts by virtue of any pretended municipal offices following an alleged illegal attempt to establish a municipal corporation. From the decree, defendants appeal.
Decree affirmed.
The appellees, who are residents and taxpayers of the territory involved, instituted suit in the Circuit Court of Dade County seeking a declaration of their rights and a decree enjoining the individual appellants from doing or performing any acts by virtue of any pretended municipal offices which they allegedly held as officers of a purported municipality, or from pretending to exercise any functions as officers of the purported municipality unless and until such time as they should become by proper and legal means lawful officers of a duly and regularly created municipality.
The bill of complaint charged, in effect, that an attempt had been made by certain inhabitants of Dade County, Florida, to establish a municipal corporation to be known as Northwest Miami Section No. 10, but that certain indispensable requirements of chapter 165, Florida Statutes 1941, F.S.A., which provides a method for the establishment of municipal corporations within the state, had not been complied with, in that two-thirds of the freeholders and registered voters of the area sought to be incorporated had never assembled or met collectively for the purpose of carrying out the terms and provisions of the requirements of the laws of Florida in regard to the creation and formation of a municipal government; that despite the illegality of these underlying proceedings the appellants were attempting to perform functions as officers of the pretended municipality and were illegally passing ordinances and incurring bills and expenses as a municipality without any authority under the law and would attempt as officers of the purported municipality to impose taxes upon the appellees without lawful authority so to do. The bill further alleged that the appellees had requested the Attorney General of Florida to grant authority to use his name in a quo warranto proceeding to test the legality of the incorporation of the municipality but that such authority had been refused; that appellees were without any remedy or relief against such illegal acts as were being, and as would be, attempted by the appellants unless a court of equity would take jurisdiction of the cause and determine whether the alleged municipality of Northwest Miami Section 10 had been duly and legally formed and whether or *Page 464 
not it was a duly incorporated municipality.
In the prayer of the bill it was asked that the Court judicially determine the legality of the proceedings and in the event it should be determined that the municipality of Northwest Miami Section 10 had not been legally created, that the Court enjoin the appellants and each of them "from doing or performing any act or acts as a municipality, or any act or acts by virtue of any office which they allegedly hold as officers of the alleged municipality, or in any way functioning as officers of the alleged municipality unless and until such time in the future as they may become, by proper and legal means, officers of a duly and legally formed municipality."
Answers were filed to the bill denying its material allegations and testimony was taken before the chancellor. At the conclusion of the hearing the chancellor entered a final decree which found that the alleged town of Northwest Miami Section 10, sometimes known as Northwest Miami, had never been legally incorporated under the law governing the incorporation of cities and towns and was without authority of any kind, nature or description to function as a municipal government for any purpose whatsoever. Based upon this finding the chancellor enjoined the appellants and their successors in office "from in anywise acting in any official capacity as city officials of the purported town of Northwest Miami Section 10, also known as Northwest Miami;" and "from conveying, transferring or disposing of any assets of any kind, nature or description that they may hold in their constructive or actual possession that constitute an asset of the town." The appeal is from this decree.
The real question to be determined on the appeal is whether a citizen and taxpayer of an area attempted to be incorporated into a municipality may question by a bill in equity the creation of the municipal corporation. The appellants maintain that a proceeding in the nature of quo warranto brought by or in the name of the Attorney General is the sole and exclusive remedy for attacking the legal existence of a municipal corporation and hence that the equity court erred in assuming jurisdiction of the cause and in entering the injunction order.
It has long been the established rule of this jurisdiction that where one seeks to attack the legal validity of a municipal government which has at least de facto existence an information in the nature of a quo warranto is the sole and exclusive remedy; the right to institute such proceedings being in the State and the institution of the action being a matter in the sole discretion of the Attorney General. See Robinson v. Jones,14 Fla. 256; MacDonald et al. v. Rehrer et al., 22 Fla. 198; Bateman v. Florida Commercial Company, 26 Fla. 423, 8 So. 51; State ex rel. Johnson v. City of Sarasota, 92 Fla. 563, 109 So. 473; Heyward, Mayor v. Hall, 144 Fla. 344, 198 So. 114. But where a purported municipality has neither de facto nor de jure existence, no such rule prevails. In such a case any person affected injuriously by the attempted incorporation of an area into a municipality may challenge the validity of the organization directly by a bill in equity brought for that purpose; provided the question of invalidity is raised as soon as reasonably possible, so that no element of estoppel, laches or acquiescence intervenes. See Chavous v. Goodbread, 156 Fla. 599,23 So.2d 761; Id., 158 Fla. 826, 30 So.2d 370.
The incorporation of the town of Northwest Miami Section 10 was attempted under chapter 165, Fla. Statutes 1941, as amended by chapter 23656, General Laws 1947, F.S.A. § 165.01 et seq., whose pertinent provisions are as follows:
"165.01 Number of inhabitants necessary to incorporate. It is lawful for the male and female inhabitants, who are freeholders and registered voters of any hamlet, village or town in this State, not less than twenty-five in number, who shall have the qualifications hereinafter prescribed, to establish for themselves a municipal government with corporate powers and privileges as hereinafter provided.
"165.03 Publication of notice to assemble and organize. Whenever any community of persons, both male and female, who are *Page 465 
freeholders and registered voters, shall desire to form a municipal corporation under the provisions of this chapter, they shall, for a period of not less than thirty days, cause to be published in some newspaper of the county, or by posting in three places of public resort in the immediate vicinage, a notice requiring all persons, male and female, who are freeholders and who are registered voters, residing in the proposed corporate limits, which shall be stated in this notice, to assemble at a certain time and place to select officers and organize a municipal government.
"165.04 Proceedings of meeting. At the time and place designated in the notice aforesaid, the male and female inhabitants who are freeholders and registered voters present, being not less than two-thirds of those whom it is proposed to incorporate, and not less than twenty-five in number, shall select a corporate name and seal for the municipality which they propose to form, and designate by definite metes and bounds the territorial limits thereof. They shall then proceed to choose by a vote of a majority of the said male and female inhabitants who are freeholders and registered voters a mayor and not more than nine and not less than five aldermen, who shall be known as the city council, and in whom shall vest the government of the city. There shall also be chosen at the same time and place, and in a like manner, a city clerk and a marshal * * *.
"165.08 Powers of corporation. The provisions of §§ 165.01-165.07 having been complied with, the persons therein named, and their successors, shall thereupon constitute and become a body corporate with full power and authority to take and to hold property, real, personal and mixed, and to control and dispose of the same for the benefit and best interest of the corporation aforesaid, to sue and be sued, plead and be impleaded, and to do all such other acts and things as are incident to corporate bodies."
The effect of section 165.08 is to make the prescribed preliminary steps required to be taken in the organization of a municipal corporation under chapter 165 mandatory conditions precedent to the valid effectuation of such a political subdivision; and the right to enjoy and exercise the franchise of a municipal corporation is made dependent upon a substantial compliance with these conditions precedent. Unless there is a substantial compliance with such prescribed conditions a "community of persons" attempting to form a municipal corporation will never "constitute and become a body corporate".
According to the sworn allegations of the bill of complaint, which were sustained by the evidence, two-thirds of the freeholders and registered voters residing within the territorial limits of the proposed municipal corporation were not present at the public meeting held for the purpose or organizing the municipality, selecting its corporate name and seal, defining its territorial limits, and electing its first officers. The presence of at least this number of freeholders and registered voters was a fundamental and jurisdictional requirement for incorporation of the municipality under chapter 165 and the failure of this number to be present at the meeting rendered the attempted incorporation proceedings void and of no effect.
The appellees were persons injuriously affected by the attempted incorporation in that they found themselves about to be subjected to tax burdens imposed by this "community of persons" which called itself a municipality but which was neither a de jure municipal corporation, due to its failure to comply with fundamental and jurisdictional steps in its incorporation, nor a de facto government by reason of long and continued use of corporate powers with public acquiescence. They moved seasonably to challenge the validity of the incorporation proceedings upon which this pseudo municipality relied for its existence, and no element of laches or estoppel or acquiescence intervened.
It is a principle implicit in section 4 of the Declaration of Rights, Constitution of Florida, F.S.A., that equity will not permit a wrong to go without a remedy. State ex rel. Bauder v. Markle, 107 Fla. 742, 142 So. 822; State ex rel. Watkins v. Fernandez, 106 Fla. 779, 143 So. 638, 86 A.L.R. 240; State ex rel. *Page 466 
Pooser v. Wester, 126 Fla. 49, 170 So. 736. The principle is peculiarly applicable to the facts of the case at bar. The appellees sought the permission of the Attorney General to challenge the underlying incorporation proceedings and permission was denied. Having exhausted this avenue of redress no other common-law remedy was available to these parties. They then turned to the equity forum to obtain protection.
To require the appellees and their property to become subject to municipal taxation, regulation and control when in fact and law no municipality exists, would amount to an unwarranted intrusion and infringement upon their private rights as citizens. When such a condition prevails a person upon whom such a burden is about to be imposed against his consent is entitled to protection by due course of law; and a court of equity is a proper forum for this purpose. Chavous v. Goodbread, supra.
The decree appealed from should be affirmed.
It is so ordered.
ADAMS, C.J. and CHAPMAN and HOBSON, JJ., concur.