O’CONNELL, Justice
(dissenting).
I regret that I cannot agree with the majority.
The sole question presented on this appeal is whether a "notice” statute, i.e. a statute which requires one who would sue a city in tort to give the city written notice of the accident, and details surrounding it, within 60 days after the accident, deals with the “government” or “jurisdiction and powers” of a municipality. If the answer is in the affirmative then the majority opinion and the trial court are correct. If the answer is in the negative, as I believe it should be, then the special act involved herein which required notice be given the city is void because not enacted in accordance with Article 3, Sec. 21, Florida Constitution, as it existed in 1937, and the plaintiff would not therefore be barred from suing the city because of failure to give such notice as he was held to be by the trial court and as was affirmed by the majority opinion.
The facts are adequately set forth in the majority opinion so will not be repeated here.
The order of the trial court which is appealed from held that the special act in question:
“ * * * is a valid law and does not violate Section 21 of Article 3 of the Florida Constitution as amended in 1928 in that the Florida Supreme Court in construing Article 3, Section 21 and Article 8, Section 8, of the Florida Constitution as amended in 1928 has held that special or local legislation affecting municipalities was not controlled by Section 21 of Article 3 and was controlled solely by Section 8 of Article 8 of the Constitution as amended in 1928 and therefore in the enactment of said legislation no notice was required as provided in Section 21 of Article 3. State ex rel. McQuaid v. County Commissioners of Duval County, 1887, 23 Fla. 483, 3 So. 193; Middleton v. City of St. Augustine, 1900, 42 Fla. 287, 29 So. 421; Charles v. City of Miami, 1936, 125 Fla. 110, 169 So. 589; State ex rel. Gray v. Stoutamire, 1938, 131 Fla. 698, 179 So. 730.”
The trial court further stated in its order that since the subject Act was enacted in 1937, Article 3, Section 21 as amended in 1928, and not as amended in 1938, must be considered. Under the section as amended in 1938 and as it now exists, the express provisions thereof make the section applicable even to special or local legislation establishing or abolishing municipalities, or providing for their government, jurisdiction and powers, or amending the same. The section as amended in 1928 but prior to the 1938 amendment contained no reference to legislation concerning municipalities but was otherwise substantially similar to the section as it now exists. This Court has recognized that as amended in 1938, Article '3, Section 21, limits the effect of Article 8, Section 8. Chavous v. Goodbread, 1945, 156 Fla. 599, 23 So.2d 761; State ex rel. Gibbs v. Couch, 1939, 139 Fla. 353, 190 So. 723. See also City of *4 Hialeah v. Piaffendorf, Fla.1956, 90 So.2d 596.
If the subject Act was within the purview of Article 8, Section 8 there remains no question as to its validity, for Article 3, Section 21 as it then existed would not be applicable. Plaintiff contends that although the subject Act was “legislation affecting municipalities” as noted by the trial court, the subject matter thereof was not within the specific provisions of Article 8, Section 8, which reads:
“The Legislature shall have power to establish, and to abolish, municipalities to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time. When any municipality shall be abolished, provision shall be made for the protection of its creditors.” (Emphasis ours.)
Plaintiff argues that the subject legislation Chapter 18896, Laws of Florida, Special Acts 1937, neither provided for the government nor prescribed the jurisdiction or powers of a municipality.
As evidence of the validity of his argument, plaintiff cites the case of Skinner v. City of Eustis, 1941, 147 Fla. 22, 2 So.2d 116, 135 A.L.R. 359 where the validity of a special act passed in 1913 was involved. That act, Chapter 6683, Laws of Florida, Special Acts of 1913, provided that all suits accruing against the Town of Eustis be instituted within six months after the cause of action accrued. This Court, 2 So.2d on page 118, said:
“We have not ignored the organic provision (Sec. 8, Art. VIII) whereby the legislature is given ‘power to establish, and to abolish, municipalities, to provide for their government, [and] to prescribe their jurisdiction and powers * * Such a special statute of limitations does not relate to jurisdiction, power or government. * * ” (Emphasis ours.)
We have recognized the close similarity between a statute of limitations and a “notice” statute such as herein involved. Town of Miami Springs v. Lasseter, Fla. 1952, 60 So.2d 774. See also Martineau v. City of Daytona Beach, Fla.1950, 47 So.2d 538. And plaintiff argues that the purpose of this type act, as defined in Olivier v. City of St. Petersburg, Fla.1953, 65 So.2d 71, 75, does not come under any of the classifications of Art. 8, Sec. 8. The latter case states that the purpose of acts of this kind is to notify the city that a person has been injured so that the city will have a reasonable opportunity to investigate the matter, determine the question of liability and effectuate a settlement, if one is justified. The opinion stated that, primarily., the purpose is to avoid litigation and the incident expense thereof.
I can see no more relationship between the “government” or “jurisdiction and powers” of a municipality and a notice statute, such as here involved, than there is between such “government” or “jurisdicr tion and powers” and a special statute of limitations such as discussed in Skinner v. City of Eustis, supra, wherein we held there was no relationship. The majority opinion fails to distinguish or overrule the Skinner case. I think the Skinner case, considered with the cases cited in the preceding paragraph, is determinative of the question involved in this appeal.
The City relies in part upon the decisions of this Court cited in the order here under review. The first of those cases is State ex rel. McQuaid v. County Commissioners of Duval County, 1887, 23 Fla. 483, 3 So. 193. In that case the Court was concerned with certain special and local statutes involving the City of Jacksonville which had been passed without notice being given of the intention to apply for their enactment as required by Art. 3, Sec. 21. This Court, 3 So. on pages 195-197, said:
“Turning our attention to section 8 of article 8, what do we find it to be? *5 It is an express and unqualified declaration of the power of the legislature to deal with municipalities ‘at any time,’ according as and whenever the public good might require the establishment or abolishment, the alteration or amendment, of any municipal government. The provision that, ‘when any municipality shall be abolished, provision shall be made for its creditors,’ clearly shows that the idea in the mind of the convention in framing this section was that the legislature might abolish a particular municipality, and that its purpose in this particular sentence was to require the legislature, in such case, to make provision for the protection of the municipality’s creditors. This section provides, in effect, for special legislation at any time upon the subject of municipalities. There is nothing in section 24 of article 3 hostile to it. The former authorizes the ‘local or special laws’ contemplated by the other, and provides that they may be enacted at any time. The only provision in the constitution which is opposed to it is the proviso to section 21 of article 3, and hence the question presented for solution is that, in one portion of the constitution prescribing regulations as to legislation, it is provided that there shall be no special legislation of a local character upon any subject on which local legislation is permitted at • any, session except one of which a prescribed notice of intention to apply for such legislation has been given; while, in another portion of the constitution, the language is such as to show clearly that legislation relating to municipalities, and consequently local in its nature, should not be restrained or hampered by the regulation as to notice prescribed for all other cases of special local legislation. Such being the fact, it is plain that the intention of the framers of the constitution in putting section 8 of article 8 in the constitution was to qualify the general effect of section 21 of article 3, or, in other words, to exempt special legislation as to cities and towns from its effect. The result of any other construction is to render the former section of no effect whatever as a part of the constitution,
* * ❖ * * *
“The conclusion we have reached is one that flows from the consideration of the several sections of the constitution; but it is nevertheless true that no fact was more prominent in the history of the times during which the question of calling the convention that framed this constitution was agitated, than the inconvenience which the people of many municipalities had suffered from the restraint placed by the constitution of 1868, of which it is a revision, upon special legislation as to-cities and towns, and the action of the convention in excepting them from the requirements of the proviso discussed was a natural response to the sentiment which had prevailed in favor of an untrammeled ■ power of legislation as to municipalities.”
The next ’ case cited was Middleton v. City of St. Augustine, 1900, 42 Fla. 287, 29 So. 421. The legislature had passed a’ curative act concerning the issuance by the' city of bonds for the purpose of erecting' electric light plants. This Court held that under Art. 8, Sec. 8 the legislature had the power, in the first instance, to authorize the municipality to erect its own electric light plant. The Court further said, 29 So. on page 433:
“The further contention that the curative act is a special or local law, and is unconstitutional, because enacted without the giving of the 60-days prior notice provided for in section 21 of article 3 of the constitution of 1885, is untenable, as held in the case of State ex rel. McQuaid v. Coun *6 ty Commissioners of Duval Co., 23 Fla. 483, 3 So. 193. * * * ”
In Charles v. City of Miami, 1936, 125 Fla. 110, 169 So. 589, also cited by the lower court, this Court held that a statute conferring authority on the city to construct public work projects and issue bonds to finance such was not violative of Art. 3, Sec. 21. This Court, 169 So. on page 590, stated:
“ * * * The act, being applicable to cities and tozvns, is not controlled by section 21 of article 3, but by section 8 of article 8 of the Constitution.” (Emphasis supplied.)
The last case cited in the order of the lower court is State ex rel. Gray v. Stoutamire, 1938, 131 Fla. 698, 179 So. 730, 734. This Court there again stated that Art. 3, Sec. 21 does not apply “to laws as to municipalities under section 8 article 8.” (Emphasis ours.) The law under construction, however, did not involve a municipality.
The City cites in addition the case of Crumbley v. City of Jacksonville, 1931, 102 Fla. 408, 138 So. 486, which will be discussed subsequently.
It is also noted by the City that in Olivier v. City of St. Petersburg, supra, the Act under question in the instant case was upheld as constitutional. Its constitutionality was attacked, however, only on the ground the Act contravened Art. 3, Sec. 20 of the Florida Constitution in that it regulated the practice of courts.
It seems clear to me that in the cases cited by the lower court the statutes involved clearly came within the terms of Art. 8, Sec. 8.
One of the statutes in the McQuaid case concerned the establishment of the municipality of Jacksonville and the other was amendatory to the first.
In Middleton, supra, the involved statute concerned the power of the municipality to erect an electric power plant. Plaintiff, in his brief, agrees that the “power” contemplated by the constitutional provision concerns a municipality’s ability to do something, “such as maintaining a police department, a fire department, a municipal hospital, a municipal gas plant, maintaining streets or levying taxes.”
It is also unquestionable that the statute involved in the Charles case, supra, related to such “power” of a municipality, since it involved the construction and financing of public work projects.
As above noted the statute involved in State ex rel. Gray v. Stoutamire, supra, did not concern a municipality.
In the Crumbley case, supra, this Court actually held that a similar “notice” statute did not violate Art. 3, Sec. 21 (the notice requirement was contained in the city charter), but as explained below it did not do so on the question here involved. The injury complained of was alleged to have been caused by the negligence of the city occurring in the prosecution of the city’s business of generating and selling electricity. The contention of the plaintiff as found in the opinion of this Court upon its first consideration of this case, Crumbley v. City of Jacksonville, 1931, 102 Fla. 408, 135 So. 885, 887, was as follows:
“It is further insisted that even if a general act requiring such notice of claim to be given within 30 days as a condition precedent to a right a [jic] recovery should be considered valid if it applied to all claims against all of the municipalities of the state, that a special act of this nature, applying only to one city, as in this case, could not be held valid, at least as to cases brought to recover for injuries received in the course of the operation by the city of the business of generating and selling electricity; that, indeed, the validity of such a general statute would be doubtful if it did not apply to all persons and corporations *7 engaged in the same business, whether municipal, private corporations, or persons. * * * ”
In that opinion this Court declined to consider this contention since it disposed of the case on other grounds.
Discussing this argument upon the second consideration of that cause in 138 So. at page 488, this Court said:
“While the argument that, when a city is engaged in the business of generating and selling electricity, its liabilities for torts committed in the operation of such business should be governed in all respects by general law applicable to all persons and corporations engaged in such business, and that therefore a statutory requirement of notice as a condition precedent to suit against a city would constitute class legislation, is a very plausible argument, the fact remains that there are such vital differences and distinctions between municipal corporations and private corporations, or individuals, as to afford some reasonable basis for the Legislature to make a different classification and rule with reference to many matters affecting cities and towns which do not apply to private corporations or private persons, without offending against those provisions of our State and Federal Constitutions which in effect forbid class legislation and which guarantee the equal protection of the laws. Const. Declaration of Rights, § 12, and article 3, § 21; Const.U. S .Amend. 14 * * (Emphasis ours.)
My conclusion is that in the opinions mentioned this Court unfortunately used words of such general import which, if taken out of context, would lead one to believe it had ruled that any legislation concerning municipalities was to be governed solely by Art. 8, Sec. 8, to the exclusion of Art. 3, Sec. 21. For instance, this Court used such terms as legislation “as to cities and towns”, “being applicable to cities and towns,” “as to municipalities,” and, in Crumbley, supra, “with reference to many matters affecting cities and towns.” I am of the opinion that this Court has not so ruled.
This conclusion may seem contradictory to the above quoted portion of our opinion in Crumbley, supra. While the Court in that case expressly referred to Art. 3, Sec. 21, it did so in relation to its statement that legislation with reference to many matters affecting cities and towns did not offend against those provisions of the state and federal constitutions “which in effect forbid class legislation and which guarantee the equal protection of the laws.” At any rate, there was not before the Court the issue whether notice of intention to apply to the legislature for enactment of the statute (the subject provision was part of the city charter) should have been given. Instead, the Court was concerned with whether the provision constituted class legislation which unjustly discriminated between a municipal corporation engaged in selling electricity and other private corporations or persons so engaged.
To confirm my view that in Crumbley this Court did not mean to rule that a “notice” statute came under Art. 8, Sec. 8 to the exclusion of Art. 3, Sec. 21, I call attention to what was said at 138 So. supra, at page 489:
“The principle that municipal corporations stand to some extent at least in a class to themselves is borne' out by the former decisions of this court to the effect that special or local legislation as to cities and towns under section 8 of article 8 of the Constitution is not controlled by section 21 of article 3, requiring publication of notice of intention to apply for the passage of local and special laws, and hence may be enacted without such notice. * * * ”
*8 The Court would hardly have made this statement at the conclusion of its opinion if it had previously in that opinion considered and decided that the “notice” statute came solely under Art. 8, Sec. 8. Also, it is to be noted that in that opinion this Court said Art. 3, Sec. 21 did not apply to special legislation, as to cities and towns, enacted “under section 8 of article 8,”. This raises the inference that this Court recognized that such legislation affecting municipalities must, in order to be exempt from the provision of Art. 3, Sec. 21, concern the powers, government or jurisdiction of municipalities.
In the McQuaid case, 3 So. supra, at page 197, this Court, speaking of the convention which drafted the Constitution of 1885, said that its action in excepting legislation as to cities and towns from the requirements of Art. 3, Sec. 21 was a “natural response to the sentiment which had prevailed in favor of an untrammeled power of legislation as to municipalities.” The •Court did not say that the result was to give the legislature such “untrammeled” power to enact legislation in anywise affecting municipalities without notice thereof being published as required by Art. 3, Sec. 21.
Subsequently, this Court held that although Art. 8, Sec. 8 gave the legislature broad powers as to legislation affecting municipalities, that section must be held subject to other applicable provisions and principles of law. See State ex rel. Atty. Gen. v. City of Avon Park, 1933, 108 Fla. 641, 149 So. 409, which discusses the purpose of Art. 8, Sec. 8 and cites a long line of decisions in support of the above statement.
Further, it appears that even in Mc-Quaid, supra, this Court recognized that legislation under Art. 8, Sec. 8, to escape the limitations or restraint of Art. 3, Sec. 21, must relate not just generally to municipalities but to either the establishment or abolishment of such, or to their government, jurisdiction or powers. The Court, at 3 So. supra, at page 196, comparing the effect of Art. 8, Sec. 8 on counties with its effect on municipalities, said:
“ * * * As between counties, on the one hand, and municipalities, on the other, there is to be noticed, however, not only the express provision as to time in section 8, but also the fact that the declaration of power extends, not only to the establishment of municipalities, but to providing for their government, prescribing their jurisdiction and powers, and to altering and amending the same * * * »
While the Court was recognizing a more extensive exception of municipal than of county legislation from the trammels of Art. 3, Sec. 21, it at the same time was recognizing that the legislation concerning municipalities must come within one of the specified types in order to be excepted from the restraint of Art. 3, Sec. 21.
The plaintiff argues, and I think with considerable merit, that the tort liability of municipalities and the prerequisite of giving notice of a tort claim against the city are not matters of purely municipal concern, but rather affect the rights of the public in general. See 2 McQuillin, Munic. Corps., § 4.112, p. 167 (3rd ed. 1949). This argument supports my conclusion that a “notice” statute is not one dealing with the “government”, “jurisdiction” or “powers” of a municipality.
I conclude that the Act herein involved was subject to the provisions of Art. 3, Sec. 21 since such “notice” statute did not relate to the power, government or jurisdiction of a municipality. My conclusion is reached after careful consideration of the strict construction which must be placed upon Art. 3, Sec. 21, since it is a limitation on the original or inherent power of the legislature as announced in Mc-Quaid, 3 So. supra at page 194. I am of the opinion that the clear intent of the framers of our constitution was to exempt *9 from the restraint of Art. 3, Sec. 21 only such special legislation relating to municipalities as established or abolished such municipalities, provided for their government, prescribed their jurisdiction and powers, or altered or amended the same.
The subject Act, Chapter 18896, Laws of Florida, Special Acts 1937, a “notice” statute, not being within the express provisions of Art. 8, Sec. 8 should have been enacted in accordance with the provisions of Art. 3, Sec. 21. Having failed to comply therewith, the Act is unconstitutional and void. Consequently, the plaintiff was not required to give the defendant City notice of the alleged accident within sixty days of its occurrence and the lower court therefore erred in dismissing the City as a defendant due to the plaintiff’s failure to comply with the statute.
I would reverse the order of the trial court dismissing the City as defendant, and remand the cause for further proceedings in accordance herewith.
ROBERTS, J., concurs.